In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4208

Jack Jay,

Plaintiff-Appellant,

v.

Intermet Wagner Incorporated, also
known as Wagner Castings Company,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98 C 2214--Michael P. McCuskey, Judge.

Argued September 28, 2000--Decided December 4, 2000

  Before Flaum, Chief Judge, and Bauer and
Harlington Wood, Jr., Circuit Judges.

  Bauer, Circuit Judge.  Jack Jay worked
for Intermet Wagner, Inc. as a
millwright, repairing and maintaining
equipment, most of which was accessible
only by climbing ladders and stairs. In
1992, Jay tore his Achilles tendon, an
injury that, according to his treating
physicians, permanently precluded him
from jobs involving climbing. When Jay
requested to be reinstated as a
millwright, Wagner refused. Rather,
Wagner placed Jay on extended medical
layoff until an appropriate position
became available 20 months later. Jay
sued Wagner under the Americans with
Disabilities Act ("ADA"). The district
court granted summary judgment to Wagner
because it found that Wagner reasonably
accommodated Jay. We affirm.

I.  Background

  As a millwright for Intermet Wagner,
Inc. ("Wagner"), Jack Jay installed new
equipment and maintained and repaired
existing machines. Much of Wagner's
equipment is located high in the plant,
requiring millwrights to climb stairs or
ladders to reach it.

  In 1992, Jay tore the Achilles tendon in

his left ankle. Jay took sick leave and underwent surgery performed by Dr. Graham. When Jay returned to work after approximately six months of convalescence, Wagner assigned him to work temporarily as an inspector, a job that did not require climbing.

Jay reinjured his left Achilles tendon in May of 1993, and again took sick leave so that he could pursue therapy. While Dr. Graham remained Jay's primary treating physician, Jay also began to see Dr. Schrodt in connection with a workers' compensation claim. Jay returned to work, again in the temporary inspector position. While Jay's ankle gradually improved, both Dr. Graham and Dr. Schrodt believed that it was permanently damaged. Dr. Graham imposed permanent work restrictions, which prohibited Jay from climbing and working in high areas.

As specified by the collective bargaining agreement, Jay's time in the temporary inspector position ran out in October of 1994. Wagner decided that Jay's work restrictions prevented his reinstatement as a millwright, and Wagner did not have an open position for which Jay qualified. Instead, Wagner placed Jay on medical layoff. Wagner considered Jay weekly for reinstatement to a position that did not require climbing and for which his seniority qualified him.

In the summer of 1995, Jay believed his ankle was healed enough so that he could return to work as a millwright. He approached Dr. Graham, Dr. Schrodt, and a new doctor, Dr. Becan, asking them to clear his work restrictions. All three doctors refused.

In late 1996, Jay again endeavored to get his work restrictions rescinded. Believing that neither Dr. Graham nor Dr. Schrodt would change his assessment, Jay sought out Dr. Elbaz, who cleared Jay to work in all capacities. Jay sent his release to Wagner and requested reinstatement to his job as a millwright. To Jay's disappointment, Wagner refused to accept Dr. Elbaz's medical release because Elbaz was not one of Jay's original treating physicians. Jay then asked Dr. Schrodt to lift his work restrictions, but after examining Jay's ankle, Dr. Schrodt refused. In response to Jay's request for reinstatement, the

Human Resources Director at Wagner asked the General Foreman of Ductile Maintenance if it was possible to employ Jay as a millwright while accommodating his work restrictions. The foreman answered in the negative because he believed that climbing was an integral part of a millwright's job at Wagner.

Undeterred, Jay again requested to be returned to his millwright position in June of 1997. After examining Jay, both Dr. Graham and Dr. Schrodt persisted in their opinions that Jay should not climb stairs or ladders. In October of 1997, Jay renewed his request for Wagner to reinstate him as a millwright, and to accommodate his ankle injury by finding work he could do at ground level. Wagner, still believing that climbing was an integral part a millwright's job, decided that such an accommodation was impossible. Jay asserts, however, that Wagner employed two millwrights who worked predominately at ground level. Wagner asked Jay to suggest other ways to accommodate his work restriction, but Jay did not respond with any new ideas.

Wagner recalled Jay to work as a box builder in October of 1998. As a box builder, Jay worked at ground level. In March of 1999, Jay transferred to the position of tractor operator, a position he still held at the time of litigation. In this position, Jay did not climb steps or ladders, but did climb into the tractor.

Jay sued Wagner under the ADA contending that he was a qualified individual with a perceived disability and that Wagner failed to provide reasonable accommodations. The district court granted summary judgment against Jay, reasoning that Wagner satisfied its obligations under the ADA.

II. Discussion

A. Standard of Review

Jay argues that the district court wrongfully granted summary judgment in favor of Wagner, and asks us to reverse. We review de novo the district court's grant of summary judgment, "drawing our own conclusions of law and fact from the record before us." Feldman v. American Mem'l Life Ins. Co., 196 F.3d 783, 789

(7th Cir. 1999) (citation omitted). We construe all facts in a light most favorable to Jay, the non-moving party. Summary judgment is proper when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## B. ADA Claim

To succeed in his appeal, Jay must demonstrate an issue of material fact or law regarding whether he is a disabled individual, whether he is capable of performing the essential functions of a millwright, and whether Wagner reasonably accommodated him. See 42 U.S.C. sec. 12101 et seq. Jay contends that he qualifies for ADA protection because Wagner regards him as substantially limited in the major life activity of climbing, and because he is able to perform all the essential functions of the millwright position. Although this Circuit has not yet decided whether climbing qualifies as a major life activity, we decline to address the issue here. For purposes of this decision, we assume that Jay has proven the first two elements of his claim. Jay cannot prevail, however, because Wagner reasonably accommodated his disability.

Jay argues that Wagner discriminated against him on the basis of his perceived disability by: (1) refusing to restructure his millwright job so that he could work exclusively at ground level; and (2) taking 20 months to place Jay in a job which complied with his work restrictions and for which his seniority qualified him. The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer can show that the accommodation would cause an undue hardship for the employer. 42 U.S.C. sec.sec. 12112(a), (b)(5)(A).

Jay first argues that Wagner failed to reasonably accommodate him because it refused to restructure his millwright job so that he could work exclusively at ground level. Assuming Jay was protected by the ADA, Wagner was obligated to provide him with a reasonable

accommodation. It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests. See Rehling v. City of Chicago, 207 F.3d 1009, 1014 (7th Cir. 2000) ("It is well established that an employer is obligated to provide a qualified individual with a reasonable accommodation, not the accommodation he would prefer."); McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1165 (7th Cir. 1997); Weiler v. Household Fin. Corp., 101 F.3d 519, 526 (7th Cir. 1996); Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996); Schmidt v. Methodist Hosp. of Indiana, Inc., 89 F.3d 342, 344 (7th Cir. 1996). Wagner declined to restructure Jay's job because, according to its foreman, there was not enough millwright work for Jay to do at ground level. Jay asserts that Wagner employed two millwrights who worked mainly at ground level. Even if Jay is correct, Wagner is not required to shuffle job responsibilities amongst employees to create a position to accommodate Jay's disability. See Gile, 95 F.3d at 499 ("[A]n employer is not required to 'bump' other employees to create a vacancy so as to be able to reassign the disabled employee. Nor is an employer obligated to create a 'new' position for the disabled employee.") (citations omitted). Wagner acted within its rights when it decided to reassign Jay to a new position rather than restructure a millwright position for him.

Jay next contends that the accommodation Wagner selected, reassigning Jay to a new job, was not reasonable due to the 20 month delay before such a position became available. The ADA's definition of reasonable accommodation includes "reassignment to a vacant position." 42 U.S.C. sec. 12111(9)(B); see Gile, 95 F.3d at 499. The reasonableness of Wagner's accommodation therefore hinges on the timeliness of the reassignment. While unreasonable delay in providing an accommodation can provide evidence of discrimination, we believe that Wagner acted reasonably and in good faith. While Jay was awaiting reinstatement, Wagner considered him for reassignment to an open position on a weekly basis. Further, Wagner kept Jay on medical layoff until he was reinstated. It simply took a long

time for a position to become available which met Jay's work restrictions and for which Jay's seniority qualified him. As soon as an appropriate position became available, Wagner offered it to Jay. We believe that Wagner's solution constituted a reasonable accommodation.

III. Conclusion

We AFFIRM the judgment of the district court.