In the

# United States Court of Appeals
## For the Seventh Circuit

―――――――――

No. 07-1567

WINDY CITY METAL FABRICATORS &
SUPPLY, INCORPORATED and MIDWEST
INK COMPANY, on Behalf of Itself
and All Others Similarly Situated,

*Plaintiffs-Appellants*,

*v.*

CIT TECHNOLOGY FINANCING SERVICES,
INCORPORATED and REED SMITH, a New
Jersey Limited Partnership,

*Defendants-Appellees*.

―――――――――

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5451—**Wayne R. Anderson,** *Judge.*

―――――――――

ARGUED OCTOBER 25, 2007—DECIDED AUGUST 1, 2008

―――――――――

Before EASTERBROOK, *Chief Judge*, and RIPPLE and KANNE,
*Circuit Judges*.

RIPPLE, *Circuit Judge.* Windy City Metal Fabricators &
Supply Inc. ("Windy City") sued CIT Technology Financ-
ing Services ("CIT") and the law firm Reed Smith in
Illinois state court. After Reed Smith removed the action

to the district court based on diversity of citizenship,[1] Midwest Ink Co. was added as a plaintiff. CIT and Reed Smith filed a motion to dismiss, which the district court granted. The plaintiffs timely appealed the dismissal.[2] For the reasons stated in this opinion, we affirm in part and reverse in part the judgment of the district court. The case is remanded for further proceedings consistent with this opinion.

# I

## BACKGROUND

### A.

Because this case comes to us after the district court dismissed the complaint for failure to state a claim, we take as true the facts alleged in the complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The events at issue in this appeal came about as a result of the activities of Norvergence, a now-bankrupt company. When still in business, Norvergence leased to business customers a telecommunications service package called the Matrix Solution. The package included the customer's communication service and hardware that could be

---

[1]  The federal court had diversity jurisdiction under 28 U.S.C. § 1332. Windy City and Midwest Ink are Illinois corporations with their principal places of business in Illinois. CIT is a Massachusetts corporation with its principal place of business in New Jersey. Reed Smith is a limited liability partnership that, at the time of removal, had no partners who were citizens of Illinois.

[2]  We have appellate jurisdiction under 28 U.S.C. § 1291.

leased only from Norvergence through an equipment rental agreement. Norvergence claimed that the equipment contained proprietary components that reduced a user's telecommunications bill; in fact, the equipment had no effect on the customer's telecommunications services. In some instances, Norvergence did not even connect the devices.

After Norvergence entered into an equipment rental agreement with a customer, it assigned that agreement to one of a number of third parties. The customer received standard telecommunications equipment that actually was worth only a small fraction of the customer's monthly payment on the equipment rental agreement. Norvergence used the funds, which it obtained by selling the equipment rental agreement to the third party, to pay the customer's telecommunications services bill. Norvergence was unable, however, to continue to pay its customers' bills because it paid more for the monthly services than it obtained by selling the rental agreements. Norvergence went bankrupt. Its customers were left without telecommunications service, but they had continuing obligations under the equipment rental agreement to pay the third-party assignee for the equipment.

Windy City and Midwest Ink are two businesses that purchased these equipment rental agreements from Norvergence. Norvergence sold their rental agreements to CIT. When Norvergence later went bankrupt, Windy City and Midwest Ink stopped receiving telecommunications services because Norvergence was no longer paying for the services. Windy City and Midwest Ink nevertheless had a continuing obligation under the assigned equipment rental agreement to lease equipment from CIT.

The Illinois Attorney General obtained a default judgment against Norvergence in an Illinois court. Under that judgment, the contracts between Norvergence and its Illinois consumers were held to have been void *ab initio* because they stemmed from solicitations that were the result of unfair business practices and fraud on the part of Norvergence. Reed Smith, acting on behalf of CIT, then executed an Assurance of Voluntary Discontinuance (the "Assurance") with the Illinois Attorney General. Under its terms, CIT offered to reduce by eighty-five percent the amount that each customer owed to CIT on its rental agreement and to refund sixty-seven percent of the insurance-related charges paid by the customer on the rental agreements.

As required by the Assurance, CIT sent a settlement letter directly to each of its lessees, including Windy City and Midwest Ink. Shortly thereafter, Reed Smith also sent a letter to Windy City's attorneys in order to ensure that they were aware of the letter. Midwest Ink accepted the settlement offer, but Windy City did not accept it.

## B.

In 2005, Windy City filed its original proposed class action complaint against CIT in Illinois state court. It sought to represent Norvergence customers whose rental agreements had been assigned to CIT. Reed Smith was added as a defendant in the fall of 2005, and it removed the action to the district court. Midwest Ink was added subsequently as a plaintiff to represent the potential class members who had accepted CIT's settlement offer. The revised second amended complaint, the operative

version on this appeal, set forth eight counts, including claims of common-law fraud and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("Consumer Fraud Act"). The complaint sought compensatory, statutory and punitive damages, as well as preliminary and permanent injunctive relief, against both CIT and Reed Smith.

The district court dismissed the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b). The plaintiffs moved for leave to further amend the complaint, but the district court denied their motion. The plaintiffs timely appealed.

## II

## DISCUSSION

We review de novo a district court's grant of a Rule 12(b)(6) motion to dismiss. *Tamayo*, 526 F.3d at 1081. As a general rule, in testing the sufficiency of a complaint, notice pleading remains the standard. A plaintiff's complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief" that is also sufficient to provide the defendant with "fair notice" of the claim and its basis. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007); Fed. R. Civ. P. 8(a)(2). In order to demonstrate that he is entitled to relief, however, the pleader must show through his allegations that "it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo*, 526 F.3d at 1083 (quotation omitted); *see also Bell Atl.*, 127 S. Ct. at 1965-66. A complaint must do more than merely "*avoid foreclosing*

possible bases for relief." *Tamayo*, 526 F.3d at 1084 (quotation omitted). It "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Id.* (quotation omitted).

In the present case, the plaintiffs' complaint includes claims against CIT and Reed Smith that allege common-law fraud and violations of the Consumer Fraud Act. The parties agree that, with respect to most of these claims, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) govern. Under Rule 9(b), a plaintiff must state with particularity "all averments of fraud or mistake." Fed. R. Civ. P. 9(b); *see also Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). The circumstances of fraud or mistake include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Gen. Elec. Capital*, 128 F.3d at 1078 (quotation omitted); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (describing Rule 9(b) particularity as "the who, what, when, where, and how: the first paragraph of any newspaper story").

The plaintiffs believe that the district court erred in dismissing their common law fraud claims against CIT and Reed Smith for failure to state with particularity the circumstances of the alleged fraud. They also submit that their claims against CIT under the Consumer Fraud Act may go forward without meeting the particularity

requirement of Rule 9(b).[3] We now address each of these contentions.

## A.

### Fraud Claims

The district court dismissed all of the plaintiffs' claims against CIT and Reed Smith on the ground that the claims sounded in fraud but failed to meet the particularity requirement of Rule 9(b). The court ruled that, although the complaint described Norvergence's fraud with particularity, it failed to describe CIT's connection to any fraud with the particularity required by Rule 9(b). The court also held that the plaintiffs had failed to state with particularity the fraud allegedly committed by Reed Smith. The district court therefore dismissed all the fraud claims against CIT and Reed Smith because the plaintiffs had failed to plead who had made a fraudulent statement, when the fraudulent statement was made and how the fraudulent statement was communicated.

---

[3] The plaintiffs additionally contend, without relying on factual or legal support, that the district court erred in refusing to permit them to file a third amended complaint. An appellant is required to provide "citations to the authorities and parts of the record" in support of his argument. Fed. R. App. P. 28(a)(9). "We have made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) (quotation omitted). We therefore shall not address this perfunctory and underdeveloped argument on appeal. *Id.*; *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

On appeal, the plaintiffs' only contention is that the district court wrongly required them to provide *evidence* of fraud to defeat a Rule 12(b)(6) motion. They correctly point out that the district court employed the word "evidence" when describing the allegations that the complaint failed to state with particularity. For instance, the district court said that "[n]o evidence . . . [was] offered to establish who at CIT knew that the assigned [equipment rental agreement] was for a bundled service and equipment lease agreement, or name the individuals who should have known, when they should have known, or how they would have known." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, No. 05 C 5451, 2007 WL 495276, at *4 (N.D. Ill. Feb. 9, 2007).

Despite its use of inartful terminology, the district court properly dismissed the plaintiffs' fraud claims for failure to state with particularity "who made the fraudulent statement, when the fraudulent statement was made, and how the fraudulent statement was made." *Id.* at *3. The district court did not require the complaint to provide actual evidence of the claims; it merely required that the claims be pleaded with the requisite particularity. *See id.* Moreover, the district court correctly determined that the complaint failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud. *See Gen. Elec. Capital*, 128 F.3d at 1078; *DiLeo*, 901 F.2d at 627. The district court therefore properly dismissed the fraud counts for failure to comply with Rule 9(b).[4]

---

[4] Count 5 of the operative complaint also alleges that Reed Smith, the law firm that represented CIT, conspired to accom-
(continued...)

## B.

### "Unfair Conduct" Under The Consumer Fraud Act

The plaintiffs submit that their claim under the Illinois Consumer Fraud Act may go forward without meeting the heightened standard of pleading fraud claims under Rule 9(b). In their view, a claim under the Consumer Fraud Act may allege either deceptive practices, which sound in fraud, or unfair practices, which do not. Because the allegations in Count I do not allege fraud but an unfair trade practice, they maintain, the governing pleading standard is the one contained in Rule 8.

### 1.

The Illinois Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The Supreme Court of Illinois has held that recovery under the Consumer Fraud Act "may be had for unfair as well as deceptive conduct." *Id.* In interpreting unfair conduct under the Consumer Fraud Act, Illinois courts look to the federal interpretations of unfair conduct under section 5(a) of the Federal Trade Commission Act, 15 U.S.C.

---

[4] (...continued)
plish the fraudulent scheme allegedly undertaken by its client. This claim must fail as well. Reading the allegations of this claim in the light most favorable to the plaintiffs, it simply alleges that Reed Smith negotiated on behalf of its client with the Attorney General of Illinois and then counseled its client with respect to how to comply with the resulting agreement.

§ 45. *Robinson*, 775 N.E.2d at 960; 815 ILCS 505/2. Thus, three considerations guide an Illinois court's determination of whether conduct is unfair under the Consumer Fraud Act: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 961. A court may find unfairness even if the claim does not satisfy all three criteria. *Id.* For example, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*.

Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b). Therefore, under federal notice pleading standards, the complaint need only provide a short and plain statement of the claim that shows, through its allegations, that recovery is plausible rather than merely speculative. *Tamayo*, 526 F.3d at 1083; *see also Bell Atl.*, 127 S. Ct. at 1964; Fed. R. Civ. P. 8(a)(2).

### 2.

By contrast with the federal pleading regimen under Rule 8, Illinois requires fact pleading even to non-fraud claims. *See Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 985 (Ill. 1981); *Robinson*, 775 N.E.2d at 961 (reviewing an appellate court's holding that none of a plaintiff's allegations had been stated with sufficient particularity and specificity to show that the defendant's conduct was unfair), 962 ("Plaintiffs argue here that all automobile

leases have standard provisions and that leases are not negotiable. However, no such averments appear in the pleadings. Thus, the appellate court correctly held that plaintiffs' bald claim of unfairness . . . was not sufficient to state a claim."). We can see no reason, however, why the standards of Rule 8 of the Federal Rules of Civil Procedure, rather than Illinois fact pleading requirements, should not apply here. It is well settled that a federal court sitting in diversity applies federal pleading requirements "even when the claim pleaded arises under state rather than federal law." *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002) (applying federal pleading requirements to an Illinois cause of action); *see also Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) (same); *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) ("[I]t is rudimentary that pleading requirements in the federal courts are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting." (internal quotation marks omitted)); *Colton v. Swain*, 527 F.2d 296, 304 (7th Cir. 1975). Although we have never explained in detail the basis for this determination, a review of the basic principles governing federal-state choice of law in the context of federal diversity jurisdiction makes clear that the federal rule must be the governing approach in this case.

It is, of course, well established that, as a general matter, a district court exercising jurisdiction because the parties are of diverse citizenship must apply state substantive law and federal procedural law. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). When evaluating whether a particular state law is procedural or substantive, district courts take as their starting point the "outcome-determinative" test of *Guaranty Trust Co. v. York,* 326 U.S. 99, 109

(1945). In that case, the Supreme Court held that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."[5] *Id.*

The bedrock case for the precise issue that confronts us today, however, must be a case that followed *Guaranty Trust*—*Hanna v. Plumer*, 380 U.S. 460 (1965). In *Hanna*, the Court was confronted, as we are today, with a conflict between a state rule of procedure and a federal rule of procedure. 380 U.S. at 469-70. The Court set forth the approach that must guide our present inquiry: We must determine whether there is an *actual* conflict between the federal and the state rule by determining "whether the scope of the federal rule is sufficiently broad to control the issue before the court." *Id.* at 470. If the federal rule is sufficiently broad to control the issue, then we must evaluate the rule to ensure that the rule has not "exceeded the congressional mandate embodied in the Rules En-abling Act nor transgressed constitutional bounds." *Id.* at 464. If the federal rule does fall within constitutional boundaries, then it should be applied, despite the fact that its application might alter the mode of enforcing a state-created right. *Id.* at 473-74. If it is not, then the tradi-tional *Erie* analysis of *Guaranty Trust* is appropriate and the court should proceed to apply the outcome-deter-minative test. *Id.* at 470.

---

[5] In *Guaranty Trust*, the Court determined that applying a state statute of limitations was appropriate despite the fact that such statutes often are referred to as "procedural." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945).

On several occasions, in applying the approach it outlined in *Hanna,* the Supreme Court had to focus on whether there was an irreconcilable conflict between a federal and a state rule of procedure. We turn briefly to those cases to determine whether the difference between the federal approach to pleading and the Illinois approach is an irreconcilable one. In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 (1980), the Court determined that Rule 3 of the Federal Rules of Civil Procedure, which addresses when an action is commenced in federal court, was not sufficiently broad to address the effect of the tolling of a state statute of limitations on when a case commences under state law. That determination, said the Court, is a substantive policy decision of the state as to the deadline after which a defendant may have peace of mind and after which it would be unfair to expect the defendant to mount a defense. *Walker*, 446 U.S. at 751.

By contrast, in *Burlington Northern Railroad Co. v. Woods*, 480 U.S. 1 (1987), the Supreme Court determined that there was a true conflict between a federal rule of procedure and a state statute. In that case, a state statute provided that when an appellate court affirmed a money judgment without substantial modification, it was to impose a ten-percent penalty on any appellant who had obtained a stay of that judgment pending appeal by executing a bond. By contrast, Federal Rule of Appellate Procedure 38 affords the federal courts of appeals plenary discretion to award damages upon a determination that the appeal was frivolous. The Court held that a federal appellate court ought to apply the federal rule. The two rules conflicted, and the federal rule was a constitutional exercise of federal rule-making authority and affected only the *process* of enforcing litigants' rights and not the rights themselves. *Id.* at 8.

Here, it is clear that a conflict between the federal and state pleading rule does exist. *Compare* Fed. R. Civ. P. 8 (requiring only notice pleading), *with* 735 ILCS 5/2-601 (requiring that pleadings contain substantial allegations of fact), *and Knox Coll.*, 430 N.E.2d at 985-86 (same). The federal and the state provisions address the same subject and require adherence to conflicting standards.

Continuing to follow the analytical model of *Hanna*, we next ask whether Rule 8 is within the congressional mandate. The Rules Enabling Act gives the Supreme Court "the power to prescribe, by general rules, the forms of process, writs, *pleadings*, and motions . . . of the district courts of the United States." 28 U.S.C. § 2072 (emphasis added). Prescribing the specificity with which a claim must be pleaded relates solely to the practice and procedure of a court and clearly falls within the scope of the Rules Enabling Act. There is, moreover, no basis for concluding that the regulation of pleading requirements in federal court is beyond the limits of federal constitutional authority. *See Hanna*, 380 U.S. at 464. Consequently, we evaluate the state-law claims in this case under the federal pleading standards.

### 3.

When we turn to the unfair conduct allegations of Count I, it is clear that this claim meets the federal notice pleading standards by "providing allegations that raise a right to relief above the speculative level." *Tamayo*, 526 F.3d at 1084 (quotation omitted). Count I alleges that CIT used unfair practices, specifically the dissemination of false advertisements for the purpose of inducing the plaintiffs to enter into unconscionable equipment rental

agreements. It further alleges that CIT violated the Consumer Fraud Act by attempting to enforce those agreements. R.79 at ¶ 77. Finally, the complaint goes on to allege that the plaintiffs suffered a loss as a result of these allegedly illegal equipment rental agreements. These allegations address the three considerations that, in combination, guide a court's determination of whether conduct is unfair. *See Robinson*, 775 N.E.2d at 961 (holding that an unfairness determination should consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers"). Although the complaint does not use specifically the words "immoral, unethical, oppressive, or unscrupulous," it alleges conduct that, if proven, could support this statutory definition of unfairness under the Consumer Fraud Act. *See id.* By claiming that CIT engaged in unfair conduct and averring facts that, if proven, make relief more than merely speculative, *Tamayo*, 526 F.3d at 1084, the plaintiffs stated adequately a claim for relief.

It is important to note that, in the procedural posture of this case, we must take the allegations of the plaintiffs in the light most favorable to them. Indeed, CIT has not answered the complaint at this stage and its position on such matters as the holder in due course defense and, specifically, the implications of the Assurance which it executed with the Attorney General of Illinois has not been stated explicitly in the present procedural context. *See IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989 (7th Cir. 2008).

**Conclusion**

For the foregoing reasons, we hold that the district court dismissed properly the entirety of the plaintiffs' fraud claims, but that the court erred in dismissing the plaintiffs' claims for unfair practices under the Illinois Consumer Fraud Act against CIT. The judgment of the district court accordingly is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion. Reed Smith may recover the costs of this appeal. The other parties shall bear their own costs of this appeal.

AFFIRMED in part and
REVERSED and REMANDED in part