# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 16, 2010         Decided July 27, 2010

No. 08-5457

ANN MARIE MOGENHAN,
APPELLANT

v.

JANET ANN NAPOLITANO, SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:98-cv-00817)

---

*Morris E. Fischer* argued the cause and filed the briefs for appellant.

*R. Craig Lawrence*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *Christian A. Natiello*, Assistant U.S. Attorney.

Before: HENDERSON and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Ann Marie Mogenhan sued her employer, the United States Secret Service, alleging that it violated the Rehabilitation Act by retaliating against her for filing a discrimination complaint and by failing to reasonably accommodate her disability. The district court granted summary judgment in favor of the Service. We reverse the grant of summary judgment on Mogenhan's retaliation claim because the retaliatory actions she alleged might well have dissuaded a reasonable person from engaging in protected activity. We affirm the grant of summary judgment on Mogenhan's failure-to-accommodate claim, however, because there is no genuine dispute that the Service reasonably accommodated her disability.

I

On January 12, 1990, the Secret Service interviewed Mogenhan for a position as a management analyst. Mogenhan told the Service that she suffered from severe migraines triggered by poor ventilation and heat. And she requested an "accommodation . . . allowing me to go out on workman's compensation if I became ill, or . . . to leave my workstation and go outside for fresh air." Mogenhan Aff. at 13-14. The Secret Service agreed. Mogenhan was hired and, on September 23, 1990, began work as a GS 9 Management Analyst.

On July 25, 1991, Mogenhan's supervisor, John Machado, gave Mogenhan her first performance appraisal, on which she scored 300 out of 400 possible points. After she objected on the ground that she had not been informed of the job elements upon which she would be evaluated, Machado advised her of those elements and opened a substitute appraisal period. On January 16, 1992, Machado gave Mogenhan a substitute appraisal that reflected her promotion to GS 11 status, awarded her 270 out of 400 possible points, and rated her performance "Fully Successful." On February 28, Mogenhan filed an equal

employment opportunity (EEO) complaint against Machado and other supervisors charging, among other things, that the January appraisal constituted gender and disability discrimination.

Mogenhan received her next performance appraisal on July 20, 1992. On that appraisal, Machado gave Mogenhan 280 of 400 possible points and, again, a performance rating of "Fully Successful." This time, he wrote that he scored her as he did because she had "difficulty maintaining good working relationships," was "ineffective in dealing with conflict," and generally had "a negative effect on the morale and motivation of other employees." Mogenhan Appraisal (July 20, 1992).

On August 7, 1992, Mogenhan sought EEO counseling with respect to her February discrimination complaint. Twenty days later, Machado posted the February complaint on the Secret Service intranet, where Mogenhan's fellow employees could and did access it. He posted the complaint, she said, "to ostracize me with other agency employees and label me as a 'troublemaker.'" Mogenhan Aff. at 5 (Dec. 1, 2004). Then, on September 10, Machado increased her workload to five to six times that of other employees, indicating that he was "doing so 'to keep [her] too busy to file complaints.'" *Id.*

In 1991, Mogenhan's migraines grew more frequent, and she realized that her workspace had become warmer. At some unspecified time after that, she asked Machado "to cool the area off . . . in any manner that he could." Mogenhan Tr. at 74. The Secret Service then undertook two air quality studies, *see* Indoor Air Quality Assessment (Dec. 30, 1991); Indoor Air Quality Assessment (May 21, 1992), implemented several of the studies' recommendations to increase ventilation, and installed large fans. In October 1992, the Service moved Mogenhan to an individual office and installed an air conditioner for her.

4

On March 9, 1998, Mogenhan filed suit against the Secret Service in the U.S. District Court for the District of Columbia, charging gender discrimination, disability discrimination, creation of a hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e); the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*; and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* In September 2008, the district court granted summary judgment in favor of the government on all counts. *Mogenhan v. Chertoff*, 577 F. Supp. 2d 210, 220 (D.D.C. 2008). On appeal, Mogenhan substantively disputes only two Rehabilitation Act claims: that the Service retaliated against her for filing discrimination complaints, and that it failed to reasonably accommodate her disability. Accordingly, we address only those challenges.[1]

II

We review the district court's grant of summary judgment de novo and "must view the evidence in the light most favorable to the nonmoving party." *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see Anderson*, 477 U.S. at 247-48. A dispute about a material fact is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the

---

[1]*See Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (ruling that a claim is forfeited on appeal if made only in a "conclusory" manner because "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work" (internal quotation marks omitted)); *N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007).

nonmoving party." *Anderson*, 477 U.S. at 248. We consider Mogenhan's retaliation claim in subpart A and her failure-to-accommodate claim in subpart B.

A

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may "be subjected to discrimination" by any federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Act states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [provisions of] the Americans with Disabilities Act." *Id.* § 794(d). The ADA, in turn, has both an anti-discrimination and an anti-retaliation provision. The anti-discrimination provision makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The anti-retaliation provision, which is at issue here, bars "discriminat[ion] against any individual because such individual . . . made a charge . . . under this chapter." *Id.* § 12203(a); *see Smith v. District of Columbia*, 430 F.3d 450, 454-55 (D.C. Cir. 2005).

The district court held that, for retaliatory conduct to be actionable, it must meet the same threshold of adversity required for discriminatory conduct. *Mogenhan*, 577 F. Supp. 2d at 216. That is, the conduct must constitute an "adverse employment action," *id.*, which the court defined as an action that results in "'materially adverse consequences affecting the terms, conditions, or privileges of employment,'" *id.* at 215 (quoting, inter alia, *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir.

2006)). Under that standard, the court rejected Mogenhan's retaliation claims. *Id.* at 216. This was error.

In *Steele v. Schafer*, we confronted this issue in the context of an action brought under Title VII of the Civil Rights Act, which contains anti-discrimination and anti-retaliation provisions that are indistinguishable from those of the ADA. 535 F.3d 689, 695 (D.C. Cir. 2008).[2] As we explained in *Steele*, the Supreme Court held in *Burlington Northern* that, because the "'language of the substantive [anti-discrimination] provision differs from that of the anti-retaliation provision in important ways . . . Title VII's substantive provision and its anti-retaliation provision are not coterminous.'" *Steele*, 535 F.3d at 695 (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 61, 67 (2006)). The *Burlington Northern* Court expressly rejected the Sixth Circuit's standard for retaliation claims -- which was the same standard that circuit had applied to discrimination claims and the same standard the district court applied to Mogenhan's claims in this case. 548 U.S. at 60; *see Steele*, 535 F.3d at 695. In its place, the Court adopted the following standard: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks omitted); *see Steele*, 535 F.3d at 696; *see also Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010); *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C.

---

[2]*See* 42 U.S.C. § 2000e-2(a) (making it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"); *id.* § 2000e-3(a) (barring "discriminat[ion]" against an employee "because he has made a charge . . . under this subchapter").

Cir. 2008). In *Baloch v. Kempthorne*, this court applied the *Burlington Northern* standard to retaliation claims under the Rehabilitation Act as well as Title VII. *See Baloch*, 550 F.3d at 1198.

Applying this standard to Mogenhan's claims, we conclude that she proffered evidence from which a reasonable jury could find that the Secret Service retaliated against her in ways that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (internal quotation marks omitted). Two of Mogenhan's proffers -- perhaps alone but certainly in combination -- suffice to require us to reverse the district court's grant of summary judgment.

First, Mogenhan's affidavit states that on August 27, 1992 -- twenty days after she sought EEO counseling regarding her complaint of disability and gender discrimination -- Mogenhan's supervisor posted her EEO complaint on the Secret Service intranet, where her fellow employees could and did access it. He did this, she said, "to ostracize me with other agency employees and label me as a 'troublemaker.'" Mogenhan Aff. at 5 (Dec. 1, 2004). The government offered no contrary explanation for the supervisor's behavior, nor does it address the point on appeal. In such circumstances, a jury could believe that broadcasting an EEO complaint would have such an effect -- and so chill a reasonable employee from further protected activity.

Second, Mogenhan states that less than one month after her supervisor published her complaint to her colleagues, he increased her workload to five to six times that of other employees, indicating that he was "doing so 'to keep me too busy to file complaints.'" *Id.* A reasonable employee might well be dissuaded from filing an EEO complaint if she thought

her employer would retaliate by burying her in work. *See Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (noting that, ordinarily, "increas[ing] an employee's] workload and tighten[ing] her deadlines in retaliation for her seeking a reasonable accommodation . . . might suffice to defeat summary judgment on a retaliation claim"). *Burlington Northern* requires no more than that to establish a materially adverse action.[3]

Because the district court granted summary judgment on the ground that Mogenhan failed to raise a genuine issue as to whether the retaliation she alleged was "materially adverse," and because she did raise such a genuine issue, we reverse the dismissal of her retaliation claim.

---

[3]In her appellate briefs, Mogenhan asserts that the district court also wrongly dismissed a third retaliatory act as not "materially adverse": her score of 280 on her July 1992 appraisal. Mogenhan contends that "a fact-finder could reasonably conclude that *declining* performance appraisals would deter a reasonable employee from engaging in protected EEO activity." Appellant's Br. 21 (emphasis added). But Mogenhan's July 1992 score did not represent a decline; it was actually 10 points *higher* than her previous score. Although Mogenhan responds that she had received a score of 300 on an earlier 1991 appraisal, her score had gone down to 270 by the time of her January 1992 appraisal -- more than a month *before* she filed her EEO complaint on February 28, 1992. At oral argument, Mogenhan contended for the first time that it was not the score, but rather her supervisor's written comments on the appraisal form, that constituted the materially adverse retaliatory act. Oral Arg. Recording at 5:09-13:21. When "first offered at oral argument," however, such a contention simply "comes too late" for our consideration. *Klamath Water Users Ass'n v. FERC*, 534 F.3d 735, 740 n.3 (D.C. Cir. 2008) (internal quotation marks omitted); *see Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003).

B

In addition to prohibiting retaliation, the Rehabilitation Act incorporates the ADA's ban on discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *see* 29 U.S.C. § 794(a), (d). Such discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. § 12112(b)(5)(A). The district court rejected Mogenhan's failure-to-accommodate claim on the ground that she had not established there was a genuine issue that her heat-induced migraines rendered her disabled within the meaning of the ADA. Alternately, the court found that there was no genuine dispute that the Secret Service reasonably accommodated her disability. We do not reach the court's first ground because it was clearly correct as to the second.

Mogenhan does not deny that the Secret Service eventually accommodated her disability by moving her to an air-conditioned office. Nor does she dispute that the Service acted reasonably in attempting alternatives before settling on the office move. *See* Appellant's Reply Br. 9-10. Indeed, her first request to her supervisor was simply "to cool the area off . . . in any manner that he could." Mogenhan Tr. at 74. And as both Mogenhan and the government agree, employers and employees may need to engage in an "interactive process" in order to identify and implement a workable accommodation. Appellant's Reply Br. 9-10; Appellee's Br. 22.[4]

---

[4]*See also* 29 C.F.R. § 1630.2(o)(3) (EEOC regulation) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations

In this case, the interactive process began with Mogenhan's pre-employment request that the Secret Service accommodate her headaches by allowing her, as needed, to step outside for fresh air or go out on workers' compensation. The Service agreed. At a later point, she asked that her workspace be cooled. Aware that both heat and poor ventilation could trigger her migraines, the Service commissioned a pair of air quality studies, then implemented the studies' recommendations to increase ventilation, then installed large fans, and finally moved her to an air-conditioned office. During all of that time, the Service continued to permit her to take time off on workers' compensation.

Mogenhan does not dispute the reasonableness of the intermediate steps undertaken by the Secret Service in response to her request for an accommodation. Oral Arg. Recording at 18:02-18:37. Instead, she argues that they proved ineffective and that it took too long to finally reach an effective accommodation. *Id.* As we have previously suggested, there are certainly circumstances in which a "long-delayed accommodation could be considered" unreasonable and hence "actionable under the ADA." *Mayers*, 478 F.3d at 368 ("doubt[ing] that a three-year delay in accommodating a plaintiff's disability is not actionable"); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262 (10th Cir. 2001) (noting that "a few courts have concluded that an employer's delay in providing reasonable accommodation may violate the ADA"); *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (holding that, "[w]hile unreasonable delay in providing an accommodation can provide evidence of discrimination," the defendant's delay was not unreasonable).

resulting from the disability and potential reasonable accommodations that could overcome those limitations.").

This case, however, does not present such circumstances. *See Selenke*, 248 F.3d at 1262 (holding that delay in implementing a final accommodation for an employee's sinus problems did not constitute a failure to reasonably accommodate where the employer hired a consulting firm to conduct air-flow testing, followed its recommendations, ultimately made the changes the employee requested, and never denied the employee's requests for leave). Mogenhan cannot even begin to establish that the interactive process took too long, because she submitted no evidence as to when she first requested that the Service cool her workspace. Indeed, when asked about this at oral argument, Mogenhan's counsel conceded: "She doesn't give a date." Oral Arg. Recording at 16:28. Nor does the record reveal when an important intermediate step, the installation of the large fans, took place. Both Mogenhan and her supervisor testified that they did not know when that happened. Mogenhan Tr. at 80; Machado Dep. at 38. Under these circumstances, no reasonable jury could conclude that the Secret Service failed to "mak[e] reasonable accommodations" to her disability. 42 U.S.C. § 12112(b)(5)(A).

## III

For the foregoing reasons, we vacate the opinion of the district court, reverse its grant of summary judgment on Mogenhan's claim that the Secret Service unlawfully retaliated against her, and affirm its grant of summary judgment on her claim that the Service failed to reasonably accommodate her disability.

*So ordered.*