In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3145

SCOTT MCCRAY,

*Plaintiff-Appellant*,

*v.*

ROBERT WILKIE, Secretary of the
Department of Veterans Affairs,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:18-cv-1637-DEJ — **David E. Jones**, *Magistrate Judge.*

SUBMITTED APRIL 7, 2020 — DECIDED JULY 16, 2020

Before ROVNER, HAMILTON, and BARRETT, *Circuit Judges*.

ROVNER, *Circuit Judge*. Scott McCray sued his employer, the
Department of Veterans Affairs, for the failure to accommodate
his disabilities as required by the Rehabilitation Act of 1973, 29
U.S.C. § 701 *et seq*. The district court dismissed his complaint

for failure to state a claim. We reverse in part and remand for
further proceedings.

**I.**

As this case was resolved against McCray at the pleading
stage, we assume the truth of the well-pleaded facts in his
complaint. *See*, *e.g.*, *Huon v. Denton*, 841 F.3d 733, 738, 742–43
(7th Cir. 2016).

McCray is an employee of the Department of Veterans
Affairs ("VA"). McCray worked at the Milwaukee VA Vet
Center as a readjustment counselor from July 1997 until
September 2000, when he left for graduate studies. After
earning a Master's degree in Educational Psychology/
Community Counseling and practicing as a community
psychologist, he returned to the VA in March 2004 as a Mental
Health Case Manager. In that capacity, McCray provides a
variety of support services for military veterans, among them
engaging in one-on-one counseling (including drug and
alcohol counseling), conducting clinical groups, helping to
complete benefits applications, making in-home visits in at-risk
neighborhoods, providing case management for veterans with
severe mental illness, and transporting clients to clinical
appointments.

McCray alleges that he was subject to multiple forms of
workplace discrimination. Two of the three claims he has
pursued on appeal are claims that the VA failed to accommo-
date his disabilities; the third is a disparate treatment claim
positing that other VA employees received more favorable
accommodations than he did based on their race. (McCray is
African American; the comparators are white women.)

McCray served in the Army for a period of eight years in the 1980s (achieving the rank of Sergeant prior to his honorable discharge), and in the course of his service sustained injuries to his big toes, ankles, knees, lower back, and shoulders. He also sustained mental injuries and has been diagnosed as having an adjustment disorder with depressed moods. As of February 2013, his VA disability rating was 100 percent. In addition to his service-related disabilities, McCray suffers from hypertension, arthritis, diabetes, sarcoidosis (which is in remission), and post-traumatic stress disorder ("PTSD"). McCray's physical disabilities have a substantial negative impact on his ability to bend, stoop, climb, reach, twist, carry, sleep, and walk; pain attributed to McCray's arthritis also causes him to experience difficulty with concentration. His mental disabilities likewise affect his ability to concentrate and in addition his breathing ability; they also contribute to a sense of extreme fatigue.

In July 2012, McCray asked his supervisor, Dr. Erin Williams, that the van he was using to transport VA clients to their appointments be replaced, because the van was hurting his knee. Since his return to the VA in 2004, McCray had not previously needed an accommodation in order to perform his duties. After a preliminary meeting between McCray and an ergonomics employee in August, the van was evaluated in October by a specialist, who concluded that the "knot" on McCray's knee seemed to be caused by a lack of leg room in the van. (McCray is 6 feet 3 inches tall and weighs 390 pounds.) In November, the van began to "buck[ ] and jerk[ ]" in traffic. Although the motor pool evaluated the van and told McCray they could find nothing wrong, a co-worker who drove the van one day experienced the same problem and told McCray the

van was unsafe. In December, he was offered a temporary replacement van which he eventually accepted, but the replacement van allegedly had a cracked windshield, no rear brakes, inoperable power steering and horn, and was too small: McCray described it as worse than the original. McCray continued to ask for an appropriate replacement van as he had since he first made the request in July, but he did not get it until June 2013, 19 days after he told Williams that he was going to file an EEO complaint over the matter.

In 2014, shortly after a white female coworker complained about her van bucking and jerking, all of the case managers received new vans.

In August 2013, McCray filed a charge (his second) with the Equal Opportunity Employment Commission ("EEOC") complaining that he had improperly been denied a promotion to a higher grade level and that the VA had not reasonably accommodated him when he had requested a replacement van.

In October 2013, McCray experienced difficulty concentrating at work, which he attributed to various acts of discrimination and retaliation committed by co-workers in the wake of the charges he had filed with the EEOC. He was initially granted a two-week leave of absence, after which he returned to work and suffered a series of panic attacks. He asked that he be reassigned to another position as a reasonable accommodation; he also was prescribed (and granted) a second leave of 30 days. The following month, he was advised that the VA was unable to find him a reassignment. In response, McCray indicated that he could probably manage to continue working without reassignment if he were to be given an office on a

lower floor as an accommodation to his disabilities. That request was denied, notwithstanding the fact that there were vacant offices two floors down in the building.

By contrast, when a white female co-worker requested in February or March 2014 that her office be moved due to a medical condition, her request was granted.

McCray filed a complaint in the district court asserting, inter alia, claims of disability discrimination under the Rehabilitation Act of 1973, and race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964.

The VA moved to dismiss for failure to state a claim on which relief could be granted, and the Magistrate Judge (to whom the parties had consented to resolve the case pursuant to Federal Rule of Civil Procedure 73) granted the motion with prejudice.[1] As to the delay in providing McCray with a replacement van, the court assumed that the allegations of the complaint were sufficient to indicate that McCray was a qualified individual with a disability and that his employer was aware of his disability. R. 27 at 13. But because the VA eventually did provide him with an appropriate van, the court concluded that he had been accommodated and that, consequently, he had no viable failure-to-accommodate claim. R. 27 at 13. As to the refusal to reassign McCray or move his office,

---

[1] Because the Magistrate Judge resigned from the bench shortly after ruling on the motion to dismiss and consequently this case will necessarily be reassigned on remand, we need not address McCray's contention that the Magistrate Judge should have recused himself and allowed the motion to be decided by a different judge, as he had previously advised the parties he would do. *See* R. 29 at 3.

the court concluded that none of the complaint's allegations supported a reasonable inference that he needed to move offices in order to perform the essential functions of his job. R. 27 at 14. The court did not address the race and sex discrimination claims that McCray presses here because, as we note below, those claims were not addressed in the briefing on the motion to dismiss. *See* R. 27 at 7–8.

## II.

We review the district court's decision to dismiss the complaint de novo, accepting as true all well-pleaded facts and drawing all reasonable inferences in the plaintiff's favor. *E.g.*, *Word v. City of Chicago*, 946 F.3d 391, 393 (7th Cir. 2020). To survive a motion to dismiss, the allegations in the complaint "must plausibly suggest … a right to relief, raising that possibility above a speculative level," *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)), and give the defendant fair notice of what claim the plaintiff is making and what the basis for that claim is, *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)). We conclude that McCray has set forth at least one viable claim of disability discrimination based on the VA's delay in providing him with the accommodation of a new van.

A. *Delay in providing adequate replacement van.*

The Rehabilitation Act requires a federal employer to reasonably accommodate the known physical and mental disabilities of a qualified employee. *See* 29 U.S.C. § 794;

*McWright v. Alexander*, 982 F.2d 222, 225 (7th Cir.1992). The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act in determining whether an employer has discriminated against its employee, and so we look to cases decided under both statutes in evaluating an employer's compliance with this duty. § 794(d); *Ashby v. Warrick Cnty. Sch. Corp.*, 908 F.3d 225, 230 n.10 (7th Cir. 2018); *Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568–69 (7th Cir. 2016); *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013).

Like the district court, we have no difficulty assuming that McCray was a qualified individual with a disability and as such was entitled to a reasonable accommodation for that disability. R. 27 at 12. McCray has alleged that he has a variety of physical and mental limiting conditions, a number of which obviously could affect major life activities. He also alleges that prior to 2012, he had been able to perform the essential functions of his job without any accommodation, and that all he needed to continue doing so after that point was a new van to resolve the difficulty he had begun to experience with his knee. The question is whether the VA's delay in providing him with that van could potentially equate with the denial of a reasonable accommodation.

An unreasonable delay in providing an accommodation for an employee's known disability can amount to a failure to accommodate his disability that violates the Rehabilitation Act. *Jay v. Intermet Wagner*, 233 F.3d 1014, 1017 (7th Cir. 2000) (ADA) ("unreasonable delay in providing an accommodation can provide evidence of discrimination"); *see also Valle-Arce v. Puerto Rico Ports Auth.*, 651 F.3d 190, 200–01 (1st Cir. 2011) (ADA); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir.

2010) (Rehabilitation Act); *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262 (10th Cir. 2001) (ADA). Whether a particular delay qualifies as unreasonable necessarily turns on the totality of the circumstances, including, but not limited to, such factors as the employer's good faith in attempting to accommodate the disability, the length of the delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered alternative accommodations. *See Selenke*, 248 F.3d at 1262–63; *Olson v. Chao*, 2019 WL 4773884, at *18 (D. Mass. Sept. 30, 2019); *Sturz v. Wis. Dep't of Corrections*, 642 F. Supp. 2d 881, 889 (W.D. Wis. 2009).

McCray did not waive this claim for failing to develop it below, as the VA argues. Although McCray's presentation in the district court certainly could have made a better legal case for this claim, a review of the complaint and his memorandum opposing dismissal below leaves little doubt that the delay in accommodating him was among the claims he meant to assert (R. 1 ¶¶ 48–61; R. 19 at 7), and the VA's own citation in the district court briefing (R. 17 at 12–13) to *Morris v. Ford Motor Co.*, 2016 WL 4991772 (W.D. Wis. Sept. 16, 2016) (which in turn cites *Jay*), on the matter of delay leaves no doubt that its counsel understood the nature of McCray's claim and the legal framework governing this claim.

The facts alleged in McCray's complaint present a plausible claim for relief based on the delay in accommodating his disability. McCray informed his supervisor that the van he was driving was causing him pain when he was driving. An ergonomic specialist agreed that McCray needed a different van. Replacing the van arguably was not an especially complex

or burdensome accommodation and, indeed, the following year, new vans were given to *all* counselors. McCray raised the issue at weekly staff meetings with his supervisor, and yet the only interim accommodation he was offered was a van that was *worse* in material respects. Apart from that, there was no dialogue with McCray about what else could be done and on what timeline, an omission that could be understood to violate the VA's duty to engage in an interactive process with its employee in an effort to arrive at an appropriate accommodation, and also as evidence of his employer's lack of good faith. *See Yochim v. Carson*, 935 F.3d 586, 591 (7th Cir. 2019) (duty of reasonable accommodation includes requirement that both employer and employee engage in flexible interactive process and to make good faith effort to determine what accommodation is necessary) (citing *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786 (7th Cir. 2016)); *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."). Only when McCray threatened to file a charge with the EEOC did the VA finally provide McCray with an appropriate van. On these alleged facts, we cannot rule out the possibility that the factfinder might conclude the 11-month delay in accommodating McCray's disability was unreasonable.

In support of dismissal, the VA relies on several cases holding that delays of varying lengths in accommodating an employee's disability were not unreasonable. *See Jay*, 233 F.3d at 1017 (concluding that 20-month delay in accommodating employee's disability by reassigning him to new position did

not constitute a failure to accommodate where employer acted "reasonably and in good faith"); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1179 (7th Cir. 2013) ("We do not think a reasonable jury could find that the delay here [of two weeks to one month] in tracking down a new piece of equipment was unreasonable."), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016); *Keen v. Teva Sales & Mktg., Inc.*, 303 F. Supp. 3d 690, 730 (N.D. Ill. 2018), *appeal docketed*, No. 18-1769 (7th Cir. April 10, 2018). But these were summary judgment cases that presented developed factual records to the court, and none purports to say that a delay of any particular duration will invariably be reasonable regardless of the surrounding circumstances. As we have said, whether a particular delay is reasonable turns on the facts of a given case. McCray's allegations do not preclude a finding of unreasonableness. *See*, *e.g.*, *Krocka v. Riegler*, 958 F. Supp. 1333, 1342 (N.D. Ill. 1997) (declining to hold, on motion to dismiss, that eight-month delay in granting plaintiff his requested job assignment was reasonable as matter of law).

B.  *Refusal to reassign McCray or give him a new office.*

McCray also alleges that the VA failed to accommodate him when he requested reassignment or a new office, based on the stress he was experiencing (manifesting, ultimately, in panic attacks) due to various discriminatory actions taken by his superior (with whom he had a tense relationship) and his co-workers, which he attributes to prior discrimination charges he had filed.

As the complaint stands now, it is not clear whether this is really a claim based on his employer's failure to reasonably

accommodate a known disability or instead is a retaliation claim or a hostile environment claim. For example, the allegations are not pellucid as to what specific disabling condition or conditions McCray's reassignment and new office requests were based on, such that the VA had a duty to consider a possible accommodation to those conditions; and the briefing does little to clear up this point. We might infer from the complaint that McCray's difficulty in concentration and his panic attacks were due to his PTSD, and that assignment to a different position or workspace might be helpful to the extent the change would put distance between himself and the individuals whose actions were triggering his difficulties. *See* R.1 ¶¶ 79–85. But his opening brief suggests that a new office was necessary to alleviate physical difficulties posed by his knee disability. McCray Br. 14. In any event, because we are remanding for further proceedings on the claim that the VA unreasonably delayed accommodating McCray's need for a new van, McCray will have the opportunity to attempt to clarify and support this claim.

C. *Disparate treatment based on race and gender in providing accommodation*

Finally, McCray has argued that his complaint plausibly states claims for race and sex discrimination based on the VA's response to the requests of other employees for new equipment or a new office as compared with its response to his requests for accommodation to his disabilities. He alleges, for example, that when in 2014 a white, female co-worker "complained about her Uplander [van] bucking and jerking, all of the case managers received new vans." R. 1 ¶ 61. As we have noted, this allegation supports McCray's contention that the VA was

guilty of unreasonable delay in accommodating his need for a new van in violation of the ADA, but McCray contends that it additionally supports a claim of race and sex discrimination in violation of Title VII. Similarly, McCray points out that another white, female co-worker was given a new office when she requested one due to a medical condition, whereas he was not. R. 1 ¶ 85. This too he cites as an instance of race and sex discrimination.

But McCray waived these claims by not identifying and addressing them in responding to the VA's motion to dismiss. Although the VA's memorandum in support of the motion addressed other instances of alleged discrimination in violation of Title VII, it evidently did not perceive these instances of alleged disparate treatment as presenting claims of race and sex discrimination as opposed to a failure to accommodate McCray's disabilities. *See* R. 17 at 1–2 (summarizing claims presented in McCray's complaint). When McCray responded to the motion to dismiss, he did not correct the VA's apparent oversight by arguing that these disparities also supported claims of race and sex discrimination. *See* R. 19. His failure to do so amounted to a waiver of any such claims. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016); *Lekas v. Briley*, 405 F.3d 602, 614–15 (7th Cir. 2005).

## III.

The dismissal of McCray's complaint is reversed in part. McCray has alleged a viable claim that the VA failed to accommodate his disability as a result of the delay in providing him with a new van. He shall also be free to amend his complaint in order to clarify the nature of his claim(s) as to the

denial that he be assigned to a different position or office. The dismissal of his complaint is otherwise affirmed. The case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART,
and REMANDED