**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 7, 2020[*]
Decided January 9, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 19-1164

| | |
|---|---|
| LINDA REED, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District |
| | of Illinois, Eastern Division. |
| *v.* | No. 14-C-2247 |
| STATE OF ILLINOIS, | Jorge L. Alonso, |
| *Defendant-Appellee*. | *Judge*. |

## O R D E R

After an Illinois court denied Linda Reed's request for a court-appointed attorney to accommodate her disability during a proceeding related to the guardianship of her mother, Reed sued the State of Illinois alleging violations of the Americans with Disabilities Act and the Rehabilitation Act. The district court entered summary

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

judgment for the State on both claims. Because Reed was not denied access to the courts, we affirm the judgment.

We recite the undisputed facts, drawing reasonable inferences in Reed's favor. See *Ashby v. Warrick County Sch. Corp.*, 908 F.3d 225, 230 (7th Cir. 2018). After Reed's brother was appointed plenary guardian of their disabled mother, Reed suspected that he was mismanaging her estate. When her mother died, Reed wanted to protect her inheritance. At that time, the guardianship estate was still open in the Circuit Court of Cook County, and she involved herself in those proceedings, requesting a review of her brother's dealings and the appointment of an independent administrator.

Reed has a neurological disorder called Tardive Dyskinesia, which, according to her complaint, results in "visible symptoms including an easily-triggered startle response, involuntary movements in her limbs, hands, and mouth, and an uncontrollable impulse to move" and "[l]ess visible symptoms [of] difficulty in logical or critical thinking and inability to verbally communicate." Reed contacted the probate court's disability coordinator to request accommodations. The coordinator provided Reed with an accommodation request form and forwarded information about free or affordable legal assistance. Reed (who lives in Wisconsin) returned the form, requesting a note-taker whose notes would become part of the record and permission to participate in the court hearings by telephone (to listen to the proceedings) and email (to respond in writing, given her difficulty speaking). Later, she requested as an additional accommodation that the court appoint counsel to represent her.

The probate court granted some of Reed's requests and denied others. It permitted Reed to participate in the hearings by telephone conference, allowed her to use a note-taker, and offered to provide her with free transcripts of the proceedings. It denied her request to put the notes made on her behalf into the record. The court also denied her request to communicate via email during the proceedings but gave her permission to use a free chat service to communicate with the judge during hearings. Finally, the court denied Reed's requests for an attorney, noting that she was "not the ward or the respondent in a petition for adjudication" and that she had not taken advantage of the disability coordinator's efforts to connect her with an organization that could have helped her find an attorney.

Reed declined to use the internet chat options—maintaining that learning a new interface was too difficult—but nonetheless attended hearings by telephone. The court maintained that it could understand Reed throughout the hearings and ultimately

granted some relief: it ordered an inventory and accounting of the estate, appointed a guardian ad litem to help determine whether the brother should be discharged, and ultimately dismissed the brother as guardian. The court (both during hearings and in email correspondence with the disability coordinator) and guardian ad litem each advised Reed that she needed to open a decedent's estate to obtain the portion of her inheritance that she believed had been diverted from her.

While the guardianship proceeding was ongoing, Reed sued the State of Illinois alleging violations of the ADA and the Rehabilitation Act. See 42 U.S.C. § 12132; 29 U.S.C. § 794.[1] The district court recruited an attorney to represent her pro bono. After discovery, the State moved for summary judgment. The operative third amended complaint referenced all the accommodations that the probate court had denied, but in her response to the motion for summary judgment, Reed argued only that the State unlawfully rejected her request for an attorney, which she described as "the only appropriate remedy" given her disability.

The district court entered summary judgment for the State on both counts. It first concluded that the State enjoyed sovereign immunity on the ADA claim because it had not prevented Reed from accessing the courts. Next, the court determined that providing an attorney amounts to a service of a "personal nature" and therefore is not a reasonable accommodation under the Rehabilitation Act, just as it would not be under the ADA. 28 C.F.R. § 35.135; see *A.H. by Holzmueller v. Ill. High Sch. Ass'n.*, 881 F.3d 587, 592 (7th Cir. 2018) ("The relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are 'materially identical.'").

Reed appeals the entry of summary judgment on her ADA and Rehabilitation Act claims, arguing that the state court's denial of her request for counsel frustrated her right of access to the court because it prohibited her from meaningfully participating in

---

[1] Reed also included as defendants the Circuit Court of Cook County, three judges, and the disability coordinator, but the district court dismissed these claims as redundant of her claims against the State. See *Reed v. Illinois*, No. 1:14-cv-02247, slip op. at 1 (N.D. Ill. Aug 10, 2015) (citing *Landers Seed Co., Inc. v. Champaign Nat'l Bank*, 15 F.3d 729, 731–32 (7th Cir. 1994) (state courts are branches of state government); *Orenic v. Ill. State Labor Relations Bd.*, 537 N.E.2d 784, 795 (Ill. 1989) (circuit court employees are employees of the state); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (official capacity claims against state employees are actually claims against the state)). Reed does not challenge the dismissal of these defendants.

the guardianship proceedings. Although Reed discusses additional accommodations that she requested, we do not consider arguments that she did not make in the district court. See *Guzman v. Brown Cty.*, 884 F.3d 633, 639 (7th Cir. 2018). Our review is de novo. See *Holzmueller*, 881 F.3d at 592.

Reed first argues that the district court erred in concluding that the State was immune from suit on her ADA claim. Congress has abrogated states' sovereign immunity for cases that arise under Title II of the ADA if they implicate the "fundamental right of access to the courts." *Tennessee v. Lane*, 541 U.S. 509, 533–534 (2004). But not all rights associated with the court system fall in this category; the fundamental right of access to the courts refers to those constitutional rights that protect a litigant's ability to get into court and to receive a judgment. *King v. Marion Circuit Court*, 868 F.3d 589, 592 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1582 (2018); see, e.g., *Lane*, 541 U.S. at 515 (physical exclusion of wheelchair-bound litigants from second-floor courtroom is denial of access). Indeed, "there is no constitutional problem with … requiring litigants to pay for their own lawyers in civil cases, although those expenses may make litigation impractical if not impossible for some persons." *King*, 868 F.3d at 592.

Reed was not denied fundamental access to the court, even if the State made litigating more difficult by denying her chosen accommodation. She appeared at hearings via telephone, filed petitions, had a note-taker, and was permitted (though she declined) to communicate at hearings through an internet chat service. The court provided her with transcripts and took breaks during the hearings so that she could manage her stress when it was exacerbating her symptoms. See, e.g., *King*, 868 F.3d at 593 (no fundamental right of access was denied when claimant was able to litigate in court). Moreover, the court granted much of Reed's requested relief: it ordered an inventory and accounting of the estate and eventually discharged her brother as guardian over their mother. See *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (claimant must present evidence of valid claim that was frustrated by the denial). As to her other requested relief—the inheritance—the probate court repeatedly told Reed that only issues of guardianship were before it. To litigate over the proper distribution of her mother's assets, Reed would have had to file a separate action to reopen her mother's estate. It was not the denial of an attorney that prevented her from getting all the relief she wanted in the context of the guardianship proceeding. We do not minimize the difficulties that Reed had participating as fully as she wanted to, but she had meaningful access to the proceedings. The state's sovereign immunity, therefore, is not abrogated.

Reed next argues that she presented enough evidence from which a reasonable factfinder could conclude that she had been excluded from the probate court in violation of the Rehabilitation Act. (The State waived sovereign immunity under the Rehabilitation Act in exchange for the receipt of federal funds, see *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–2 (7th Cir. 2012).) In order to survive summary judgment, Reed needed to produce evidence that she is a qualified individual with a disability and that she was denied access to a program or activity because of her disability. See 29 U.S.C. § 794(a); *Jaros*, 684 F.3d at 672. Although the Rehabilitation Act does not contain an express accommodation requirement, we read one into the statute generally. See *Jaros*, 684 F.3d at 672 (citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).

Reed argues that the provision of an attorney to disabled, pro se litigants in a civil context can be a reasonable accommodation and was required in her situation. She asserts that, because the probate court can appoint attorneys to "wards and respondents," it is neither unduly burdensome on the court—nor would it alter the fundamental nature of the court's services—to provide them for disabled litigants as well. Further, she argues that without an attorney, she was unable to meaningfully participate in the court proceedings and so was effectively denied court access equal to that of her non-disabled peers.

We do not need to decide broadly, as the State urges us to, that "appointed counsel" is never a reasonable accommodation "as a matter of law." There may be circumstances in which a state court, in its discretion, might deem the assistance of an attorney to be a reasonable accommodation of a disability. Nor do we weigh in on whether the professional services of an attorney can be viewed as excluded "personal services" under 28 C.F.R. § 35.135. Here, as we have concluded already, Reed was neither denied physical access to the courts (she asked to litigate remotely) nor denied meaningful participation in the court proceedings. Rather, she engaged in the hearings, filed petitions and motions, and obtained some of the relief she sought.

Accordingly, we affirm the judgment of the district court.